UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────

TRUSTEES OF THE NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS
PENSION FUND, WELFARE FUND, ANNUITY
FUND, AND APPRENTICESHIP, JOURNEYMAN
RETRAINING, EDUCATIONAL AND INDUSTRY
FUND, TRUSTEES OF THE NEW YORK CITY
CARPENTERS RELIEF AND CHARITY FUND,
THE CARPENTER CONTRACTOR ALLIANCE OF
METROPOLITAN NEW YORK, AND THE
NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS,

               Petitioners,

      - against -

PHILLIP CONSTRUCTION GROUP CORP.,

             Respondent.
────────────────────────────────

21-cv-2411 (JGK)

MEMORANDUM OPINION
AND ORDER

JOHN G. KOELTL, District Judge:

    The Trustees of the New York City District Council of
Carpenters Pension Fund, Welfare Fund, Annuity Fund, and
Apprenticeship, Journeyman Retraining, Educational and Industry
Fund (the "ERISA Funds"); Trustees of the New York City
Carpenters Relief and Charity Fund (the "Charity Fund");
Carpenter Contractor Alliance of Metropolitan New York (the
"Carpenter Contractor Alliance"); and New York City District
Council of Carpenters (the "Union") (together with the ERISA
Funds, the Charity Fund, and the Carpenter Contractor Alliance,
the "Petitioners"), have filed a petition to confirm an

arbitration award (the "Petition" or "Pet.," ECF No. 1) pursuant to Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. §§ 185 et seq. The arbitration award was issued by arbitrator Roger E. Maher on November 21, 2020 and was rendered pursuant to a collective bargaining agreement involving the Union and the Respondent, Phillip Construction Group Corp. The Respondent has not opposed the Petition. For the reasons explained below, the Petition to confirm the arbitration award is **granted**.

I.

The following uncontested facts are taken from the Petition and documents submitted in support of the Petition.

The ERISA Funds are employer and employee trustees of multiemployer labor-management trust funds operated in accordance with the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001 et seq. Pet. ¶ 4. The Charity Fund is trustee of a charitable organization established under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3). Id. ¶ 5. The Carpenter Contractor Alliance is a New York not-for-profit corporation. Id. ¶ 6. The Union is a labor union that represents employees in an industry affecting commerce within the meaning of Section 501 of the LMRA, 29 U.S.C § 142. Id. ¶ 7. The Union is the certified bargaining representative for certain employees of the

Respondent. Id. The Respondent is a business corporation
incorporated under the laws of New York and was, at all relevant
times, an employer within the meaning of Section (3)5 of ERISA,
29 U.S.C. § 1002(5), and an employer in an industry affecting
commerce within the meaning of Section 501 of the LMRA, 29
U.S.C. § 142. Id. ¶ 8.

On April 4, 2016, the Respondent signed a project agreement
for a project known as the East Side Access Project (the
"Project Agreement," ECF No. 13-1). Pet. ¶ 9; see also Davidian
Decl. ¶ 4, ECF No. 15; Spencer Decl. ¶ 6, ECF No. 13. The copy
of the Project Agreement submitted to the Court was signed only
by the Respondent; the signature lines for "the Union" and "the
Business Agent" are blank.

The Project Agreement provides that "[t]he Employer agrees
to be bound to all provisions contained in the attached
collective bargaining agreement ('Agreement') and said
provisions are incorporated into this Project Agreement by
reference, including but not limited to, the Employer's
obligation to pay contributions to all Fringe Benefit Funds
contained in the attached Agreement." Project Agreement at 1;
see also Pet. ¶ 11. The "attached collective bargaining
agreement" was the 2011-2015 Independent Building Construction
Agreement (the "2011-15 CBA," ECF No. 13-3). Pet. ¶ 12; Spencer
Decl. ¶ 9. The 2011-15 CBA contained an evergreen clause that

provided for automatic renewal for one-year intervals unless
notice was provided by either party. Pet. ¶ 13; 2011-15 CBA at
Art. XIX. Neither party provided notice to terminate the 2011-15
CBA. Pet. ¶ 14.

Sometime after the Respondent signed the Project Agreement,
the Union promulgated the 2017-2024 Independent Building
Construction Agreement (the "2017-24 CBA," ECF No. 1-4)
(together with the 2011-15 CBA, the "CBAs") as a successor
agreement to the 2011-15 CBA. Pet. ¶ 15.

The CBAs require the Respondent to "make contributions for
each hour worked of all employees" covered by the CBAs and
within the Union's territory. 2011-15 CBA at Art. XV, § 1; 2017-
24 CBA at Art. XV, § 1. The CBAs obligate the Respondent to
"furnish proper records when requested, for the purpose of
completing an audit." 2011-15 CBA at Art. XV, § 1; 2017-24 CBA
at Art. XV, § 1. The CBAs further provide that "[s]hould any
dispute . . . arise . . . concerning any claim arising from
payments . . . which [are] allegedly due, either party may seek
arbitration." 2011-15 CBA at Art. XV, § 7; 2017-24 CBA at Art.
XV, § 7.

The CBAs bind the Respondent to the policies, rules, and
regulations adopted by the ERISA Funds. 2011-15 CBA at Art. XV,
§ 3; 2017-24 CBA at Art. XV, § 3. The ERISA Funds established a
policy dated January 2016 (the "Collection Policy," ECF No. 1-5)

which provides, among other things, that "[i]n the event that an employer refuses to permit a payroll review and/or audit upon request . . . the Fund Office shall determine the estimated amount of the employer's delinquent contributions based on the assumption that the employer's weekly hours subject to contributions for each week of the requested audit period are the highest number of average hours reported per week for any period of four consecutive weeks during the audit period." Id. at 6-7.

A dispute arose between the parties when the Respondent failed to make its books and records available for an audit for the period covering April 6, 2016 through May 18, 2016. Pet. ¶ 26. In accordance with the Collection Policy, the Petitioners determined that the Respondent owed an estimated $19,764.01. Id. ¶ 27; see also Collection Policy at 6. Certain of the Petitioners then initiated arbitration pursuant to the Project Agreement and CBAs. Pet. ¶ 28. After a hearing, in an opinion dated November 21, 2020, the arbitrator determined that the Respondent owed $19,764.01, together with interest, liquidated damages, and other fees, and ordered the Respondent to pay the ERISA Funds $32,876.31, with interest to accrue at an annual rate of 5.25% from the date of the award. ECF 1-7 (the "Award"); see also Pet. ¶¶ 29-30. As of the date of the Petition, the Respondent had failed to pay any portion of the Award.

II.

Section 301 of the LMRA grants federal courts jurisdiction over petitions brought to confirm labor arbitration awards. Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel, 145 F.3d 85, 88 (2d Cir. 1998). The Supreme Court has explained that district courts "are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36 (1987); see also Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n, 820 F.3d 527, 536 (2d Cir. 2016). Instead, "[a]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Int'l Brotherhood of Elec. Workers, Local 97 v. Niagara Mohawk Power Corp., 143 F.3d 704, 713 (2d Cir. 1998) (quoting Misco, 484 U.S. at 38); see also Nat'l Football League Mgmt. Council, 820 F.3d at 536. Accordingly, an arbitration award is to be confirmed if there is even a "barely colorable justification" for the decision. U.S. Steel & Carnegie Pension Fund v. Dickinson, 753 F.2d 250, 252 (2d Cir. 1985).

The Respondent has failed to respond to the Petition, and it is unopposed. However, the Court must do more than simply

issue a default judgment in favor of the Petitioners. The Second Circuit Court of Appeals has explained that a default judgment is generally inappropriate in a proceeding to confirm or vacate an arbitration award because "[a] motion to confirm or vacate an [arbitration] award is generally accompanied by a record . . . [and] the petition and accompanying record should [be] treated as akin to a motion for summary judgment based on the movant's submissions." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 109 (2d Cir. 2006).

The standard for granting summary judgment is well established. "The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Darnell v. Pineiro, 849 F.3d 17, 22 (2d Cir. 2017). The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also N.Y.C. Dist. Council of Carpenters v. Reilly Partitions, Inc., No. 18-cv-1211, 2018 WL 2417849, at *2 (S.D.N.Y. May 29, 2018).

III.

In the Award, the arbitrator found that the "uncontroverted testimony and evidence established that the Respondent was bound to a Collective Bargaining Agreement with the New York City District Council of Carpenters . . . [that] became effective 4/06/2016." Award at 2. However, as noted above, the Project Agreement submitted to the Court by the Petitioners is not signed by any Petitioner. Further, there is no indication in the Award of what evidence the arbitrator relied upon in making the finding that the Respondent is bound to the CBAs.

On July 20, 2021, the Court ordered the Petitioners to submit evidence that the Respondent was bound by the CBAs. The Petitioners submitted evidence in the form of two declarations and attached exhibits. Brian Spencer, a Union employee who reviews collective bargaining agreements and other documents executed by signatory employers, declared that the Respondents entered into the Project Agreement and that the "attached collective bargaining agreement" referenced in the Project Agreement is the 2011-15 CBA. Id. ¶¶ 3, 6-9. Mr. Spencer further declared that on or around March 29, 2016, the Respondent executed a Union administration form further effectuating its agreement with the Union. Id. ¶ 7; see also ECF No. 13-2 (the "Administration Form").

The Petitioners also submitted a declaration from William
Davidian, the Employer Services Director for the ERISA Funds,
Charity Fund, and Carpenter Contractor Alliance. Davidian Decl.
¶ 1. Mr. Davidian's duties include reviewing remittance and
payroll records submitted by signatory employers for covered
work performed within the jurisdiction of the Union. Id. ¶ 2.
Mr. Davidian declared that the Respondents remitted $41,057.24
in contributions to the ERISA Funds and the Charity Fund between
April 6, 2016 and March 28, 2017 for work performed on the East
Side Access Project. Id. ¶ 7. Appended to Mr. Davidian's
declaration is a remittance detail report appearing to show the
contributions made by the Respondent to the ERISA Funds and the
Charity Fund. ECF No. 15-1 (the "Remittance Detail Report").

The uncontroverted record before the Court establishes
that the Respondent was bound by the CBAs. Under New York law,
"an unsigned contract may be enforceable, provided there is
objective evidence establishing that the parties intended to be
bound." Ajche v. Park Ave. Plaza Owner, LLC, 98 N.Y.S.3d 13, 16
(App. Div. 2019). The fact that the Respondent signed the
Project Agreement is compelling objective evidence that the
Respondent intended to be bound by the Project Agreement (which
in turn incorporates the CBAs). The Respondent also signed the
Union's Administration Form, which further evidences the
Respondent's intent to be bound by the Project Agreement and

CBAs. <u>See</u> Administration Form at 1 (form "MUST BE COMPLETED BY AN OFFICER OF THE COMPANY TO EFFECTUATE AGREEMENT"). Finally, the Remittance Detail Report shows that the Respondent made contributions under the Project Agreement and CBAs, which is additional evidence of the Respondent's intent to be bound by the relevant agreements. <u>See</u> <u>LaGuardia v. Brennan Beer Gorman/Architects, LLP</u>, 105 N.Y.S.3d 896, 898 (App. Div. 2019) ("The manifestation or expression of assent necessary to form a contract may be by word, act, or conduct which evinces the intention of the parties to contract.").

Moreover, the absence of the Petitioners' signatures on the Project Agreement does not render the contract unenforceable against the Respondent, who undisputedly signed the Project Agreement. <u>See, e.g.</u>, <u>Vista Properties, LLC v. Rockland Ear, Nose & Throat Assocs., P.C.</u>, 875 N.Y.S.2d 248, 249 (App. Div. 2009) ("[T]he absence of a signature by the party seeking to enforce the agreement is without legal significance. . . . Since the defendant is the party to be charged, the fact that the lease was not signed by the [plaintiff] is immaterial.").

The uncontroverted record also supports the arbitrator's conclusion that the Respondent failed to make contributions in violation of the Project Agreement and CBAs. The Respondent refused to make its books and records available for an audit. Award at 2. The arbitrator reasonably relied on evidence

submitted by the Petitioners in the form of a summary report to conclude that the Respondent failed to make an estimated $19,764.01 in contributions to the relevant funds. Id.

In view of the evidence submitted by the Petitioners, it is clear that the arbitrator's Award was not "his own brand of industrial justice." Misco, 484 U.S. at 36 (quoting United Steelworkers, 363 U.S. at 597). Based on the limited review that is appropriate of an unopposed petition to confirm an arbitration award, there is no genuine dispute of material fact and that the Petitioners' petition to confirm the arbitration award should be granted.

The Petitioners also seek judgment to recover attorney's fees expended in this action. Courts in this district "have routinely awarded attorneys [sic] fees in cases where a party merely refuses to abide by an arbitrator's award without challenging or seeking to vacate it through a motion to the court." Trustees of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund v. All. Workroom Corp., No. 13-cv-5096, 2013 WL 6498165, at *6 (S.D.N.Y. Dec. 11, 2013) (quoting Abondolo v. H & M.S. Meat Corp., No. 07-cv-3870, 2008 WL 2047612, at *4 (S.D.N.Y. May 12, 2008)). In this case, the attorney's fees sought by the Petitioners are reasonable. In relevant part, Article XV, Section 6 of the CBAs provide that:

> In the event that formal proceedings are instituted before
> a court of competent jurisdiction . . . to collect
> delinquent contributions . . . and if such court renders a
> judgment in favor of [the Funds], the Employer shall pay to
> such Fund(s) . . . reasonable attorney's fees and costs of
> the action . . . .

2011-15 CBA at Art. XV, § 6(a); 2017-24 CBA at Art. XV, § 6(a).

In support of the Petitioners' claim for attorney's fees, the Petitioners' counsel submitted an invoice listing the tasks completed, the hourly billing rates, and the total hours billed. ECF No. 1-8. The Petitioners seek $1,797.50 in attorney's fees for 6.4 hours of work, for which the Petitioners' counsel billed the services of a partner attorney at a rate of $350 per hour and an associate attorney at a rate of $275 per hour. Pet. ¶¶ 37-39. The rates billed and time expended on this action by the Petitioners' counsel are reasonable. See Trustees of N.Y.C. Dist. Council of Carpenters Pension Fund v. Stop & Work Constr., Inc., No. 17-cv-5693, 2018 WL 324267, at *3 (S.D.N.Y. Jan. 5, 2018) (approving attorney's fees that billed Of Counsel attorneys at a rate of $300 per hour and an associate attorney at a rate of $225 per hour); Trustees of N.Y.C. Dist. Council of Carpenters Pension Fund v. Metro. Fine Mill Work Corp., No. 14-cv-2509, 2015 WL 2234466, at *5 (S.D.N.Y. May 12, 2015)

(approving attorney's fees that billed associates at a rate of $225 per hour).

The Petitioners are also entitled to post-judgment interest on the full amount of the judgment at the rate provided under 28 U.S.C. § 1961(a). See Lewis v. Whelan, 99 F.3d 542, 545 (2d Cir. 1996) ("The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered.") (citing 28 U.S.C. § 1961(a)).

### CONCLUSION

The Clerk of Court is directed to enter judgment granting the Petition to confirm the arbitration award dated November 21, 2020 in the amount of $32,876.31, plus interest from November 21, 2020, the date of the arbitration award, accrued at an annual rate of 5.25% until the date of judgment. The Clerk is also directed to enter judgment in favor of the Petitioners and against the Respondent in the amount of $1,797.50 in attorneys' fees and $75.00 in costs. Post-judgment interest on the entire amount of the judgment will accrue from the date of this judgment at the rate provided by 28 U.S.C. § 1961(a). The Clerk is further directed to close this case.

**SO ORDERED.**

Dated:    New York, New York
          August 12, 2021

                                    _____
                                       John G. Koeltl
                                 United States District Judge